Judge Tiffany M. Cartwright

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AARON JAMES QUINN,<br><br>Defendant. | NO. CR25-5167<br><br>UNITED STATES' SENTENCING MEMORANDUM |

The calm of the noon hour in a Key Peninsula grocery store parking lot was shattered when fugitive Aaron James Quinn intentionally and repeatedly rammed his truck against vehicles occupied by United States Marshals Service Deputies and Task Force Officers. One officer suffered bodily injury from the assault; numerous vehicles – law enforcement and civilian-owned – were damaged. The United States respectfully recommends the Court impose a custodial sentence of 96 months followed by a three-year term of supervised release, order restitution in the amount of $17,396.75, and impose the mandatory $200 fee.[1] Quinn appears before this court for sentencing in the

---

[1] The restitution amount reflects the request received as of today's date. If the United States receives any additional claims prior to the sentencing hearing, this request could increase.

United States' Sentencing Memorandum - 1
United States v. Quinn, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

above-captioned case pursuant to his guilty plea on October 23, 2025, to two counts of Assault of a Federal Officer in violation of Title 18, United States Code, Section 111(a) and (b).

## I.   BACKGROUND

**A.   Offense Conduct**

Snohomish County law enforcement had arrested Quinn on various dates between February 2022 and June 2024 on charges of vehicle theft, burglary, and drug trafficking. Presentence Report (PSR) ¶¶ 57-59, 67-71. Quinn posted bail; on March 14, 2025, the Snohomish County Superior Court issued three bench warrants for Quinn's violations of pretrial release conditions. The United States Marshals Service Pacific Northwest Violent Offender Task Force was familiar with Quinn and took up the search for him. They knew he had been armed, fled, and eluded officers in the past.

In early April 2025, officers learned that Quinn – a lifelong resident of Snohomish County – was in an extremely rural area of the Key Peninsula in Pierce County. They also learned that Quinn had posted on social media within the past week that he knew he was wanted and believed he could not be found. On April 4, officers found Quinn and followed him to a local park and then a grocery store. PSR ¶ 9. Officers used their vehicles to "pin" Quinn's white Dodge Ram 1500 truck in the parking lot. At least one had its lights and siren activated; officers wearing marked body armor with their weapons drawn surrounded Quinn's truck and issued commands for him to get out with his hands up. PSR ¶ 10. The screenshot on the next page shows Quinn's white truck, in the grocery store parking lot, surrounded on three sides by law enforcement vehicles.

United States' Sentencing Memorandum - 2
United States v. Quinn, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800



Quinn ignored the commands and instead began intentionally ramming into officers' vehicles, accelerating and reversing rapidly ("burning out" his tires, as one officer described it). PSR ¶ 11. Quinn's repeated and forceful maneuvers were so violent that one officer's vehicle "shudder[ed] and move[d] significantly" while the officer was inside. This officer – Victim 1 – had to move his vehicle away from Quinn's. Another officer – Victim 2 – pulled into the pin formation to replace Victim 1's vehicle. Quinn reversed rapidly and hit the front of Victim 2's vehicle, causing it to "buckle backward" with a clearly visible shock and reverberation throughout Victim 2's vehicle. PSR ¶ 12. On impact, Victim 2 felt a whiplash-like feeling in which his head lurched forward before colliding with the back of the headrest. Victim 2 reported that the collision was jarring and physically painful. PSR ¶ 12.

Throughout this encounter, Quinn's maneuvers damaged other vehicles in the parking lot. A photo showing the damage to one of those vehicles is on the next page; the photo also shows the dirt/bark kicked up from the parking lot landscaping during the encounter.

United States' Sentencing Memorandum - 3
United States v. Quinn, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800



Several officers reported Quinn nearly ran them over. Eventually, Quinn managed to escape the parking lot and drove down public roads at a high rate of speed across a bridge before he lost control of his truck and crashed it into a relatively shallow ditch. PSR ¶ 13. Quinn fled on foot, jumped into a river and swam away, still refusing multiple commands to stop and surrender. Even when officers caught up to Quinn, he continued to resist arrest until officers were ultimately able to secure him in handcuffs.

The United States received paperwork from Element Fleet Management regarding the damage/loss to one of the Task Force Officer's vehicles, in the amount of $17,396.75.

**B.   Procedural History**

Following the April 4, 2025, arrest described above, Quinn was taken into state custody on the outstanding warrants, pending prosecution in state court. PSR ¶¶ 57-59. The federal grand jury indicted him on June 25, 2025, on two counts of Assault of a Federal Officer. PSR ¶ 1. In late September 2025, Quinn resolved his pending state court prosecution with guilty pleas to 11 different felonies, resulting in a 120-month state

United States' Sentencing Memorandum - 4
*United States v. Quinn*, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

sentence. PSR ¶¶ 57-59. He appeared in federal court on October 23, 2025, through a writ, and entered his guilty pleas to both assault counts. PSR ¶ 2.

## II.     SENTENCING GUIDELINES CALCULATIONS

### A.    Offense Level

The undisputed base offense level is 14, with increases for the use of a dangerous weapon (Quinn's vehicle), bodily injury to a victim,[2] the "official" status of the victim, and for multiple counts. PSR ¶¶ 2, 21-39. The combined adjusted offense level is 31, and Quinn receives a three-level decrease for his acceptance of responsibility, bringing the total offense level to 28. PSR ¶ 44.

### B.    Criminal History Category

Quinn's criminal history started a quarter-century ago, with his arrest at age 18 for attempted theft, third degree. PSR ¶ 46. Since then, he has been arrested more than two dozen different times for offenses ranging from driving with a suspended license and shoplifting to armed drug trafficking, second degree assault, and first degree robbery. PSR ¶¶ 47-71. As Quinn himself noted, since the age of 18 he has "only gone without law enforcement interaction less than a year at a time." PSR ¶ 81.

Because his criminal history spans such a significant period, many of the convictions – even one as long as 36 months – are too old to score. PSR ¶¶ 46-53. Those that do score earn Quinn 15 points, with an additional point for commission of the instant offense while under a term of supervision, bringing his total to 16 points. PSR ¶ 62. This is quite literally off the charts; he is three points over what is needed for placement in Category VI.

### C.    Guidelines Range

With a total offense level of 28 and a Criminal History Category of VI, the advisory guidelines range is 140 to 175 months. PSR ¶ 105.

---

[2] The parties did not include this increase in the Plea Agreement, but neither disputes its application.

United States' Sentencing Memorandum - 5
United States v. Quinn, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### III. FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence Quinn to 96 months of confinement, to run concurrently with the three sentences imposed in Snohomish County Superior Court, followed by a three-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), and (a)(2)(A) and (C). A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

### A. Nature and Circumstances, and Seriousness of the Offenses

The nature and circumstances of these assaults are extraordinarily serious. Quinn was not an unwitting bystander, or a person surprised by an unexpected law enforcement encounter. He was a fugitive, wanted on several outstanding felony warrants, who knew he was wanted and believed he would not be found. When a team of clearly marked law enforcement officers moved to apprehend him, Quinn did not accept that the jig was up. He did not attempt to surrender. Instead, he chose to respond with violence, turning his vehicle into a weapon. Quinn caused physical injury to Victim 2, exposed all the officers on scene to serious risk of death or great bodily harm, damaged law enforcement vehicles, and damaged vehicles belonging to innocent civilians. It is a matter of sheer luck that no officer was more gravely injured, not a matter of Quinn's restraint.

But Quinn's dangerous conduct did not end in that parking lot. He then engaged in a high-speed flight on public roads, disregarding traffic laws, other motorists, and any pedestrians who might have been in his path. This created substantial risk of injury not only to the officers who pursued him but to every member of the public who happened to be on or near those roadways. Taken together, these facts show that this was not a momentary lapse in judgment but instead a sustained course of dangerous, assaultive

United States' Sentencing Memorandum - 6
United States v. Quinn, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

conduct that endangered the federal officers and the public at large. The nature and circumstances of these offenses strongly support a 96-month custodial sentence.

B.  **History and Characteristics of the Defendant**

The United States agrees with the Probation Office's assessment that although Quinn had some challenges in childhood, those "do not equate to a free pass to victimize others and introduce chaos into the community." Quinn has stolen, driven while drunk, violated no contact orders, eluded law enforcement, possessed stolen vehicles, and trafficked in stolen property. His history is marked by multiple prior convictions for drug trafficking and violent crime. He is not a first-time offender but rather a repeat, serious lawbreaker who has persisted in dangerous conduct over more than two decades despite prior sanctions, including an 82-month state prison term. PSR ¶ 56. His most recent crimes before this one – for offenses he committed over a two-year span – will see him back in state prison for the next decade. PSR ¶¶ 57-59.

For the past two decades, and, really, most of his adult life, he has not worked a legitimate job. PSR ¶ 100. Although Quinn apparently told the Probation Office he "stopped selling controlled substances when his [now five-year-old] son was born," PSR ¶ 79, this is flatly contradicted by his arrest three years ago for two counts of possession of methamphetamine with intent to deliver – drug trafficking – charges to which he recently pled guilty. PSR ¶ 57.

C.  **Need to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protection of the Public from Further Crimes**

A meaningful sentence is necessary to promote respect for the law and to provide just punishment for this offense. Quinn's conduct was an open defiance of lawful authority at multiple levels. He had already demonstrated disregard for court orders and the criminal justice system by remaining at large despite knowing of his outstanding felony warrants. When confronted by officers tasked with bringing him into custody, he escalated his wanton disregard into active, violent resistance.

United States' Sentencing Memorandum - 7
United States v. Quinn, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Assaulting Deputy Marshals and Task Force Officers tasked with arresting violent offenders strikes at the core of the justice system. When a violent fugitive responds to a lawful arrest by ramming occupied law enforcement vehicles and then fleeing at high speed through public streets, the sentence must reflect the gravity of that choice. A 96-month term of imprisonment appropriately recognizes the seriousness of Quinn's conduct, the harm and risk he created, and the affront to the rule of law. It also accounts for the fact that Quinn's actions were not in a vacuum; they occurred against the backdrop of his existing felony warrants (issued in connection with Quinn's other violent crimes), underscoring a long pattern of noncompliance with legal obligations.

A significant sentence is necessary to reflect the seriousness of the offense and to promote genuine respect for the law, rather than the calculated defiance Quinn has exhibited to date.

And, both specific and general deterrence strongly support a significant sentence in this case. With respect to specific deterrence, Quinn's conduct demonstrates that previous extensive encounters with the criminal justice system were not enough to deter him from further crime. Indeed, he chose to escalate to violent resistance and dangerous flight. A meaningful term of imprisonment is therefore necessary to impress upon Quinn that there are serious, unavoidable consequences for such choices. Anything less risks reinforcing his apparent belief that he can evade accountability through violence and reckless behavior. General deterrence is also a critical consideration. Deputy Marshals routinely execute warrants in public spaces. If fugitives believe they can ram vehicles, injure officers, and endanger the public with little more than a nominal increase in punishment, others may be tempted to take the same path.

In sum, the need to promote respect for the law, to protect the public from Quinn's further crimes, to provide just punishment for these serious assaults, and to afford both specific and general deterrence all point in the same direction: a substantial term of imprisonment within, and comfortably supported by, the advisory Guidelines range.

United States' Sentencing Memorandum - 8
United States v. Quinn, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**D.     Kinds of Sentences Available, and Any Necessary Educational or Vocational Training or Other Special Care**

Quinn should take full advantage of this time to participate in as much educational and vocational training as he can, to best position himself for post-release success.

**E.     Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

The average term imposed for defendants convicted for an offense falling under the same guideline (§2A2.2, Aggravated Assault), with the same final offense level, and in the same Criminal History Category, was 176 months. Quinn's advisory range is below that, at 140 to 175 months. The recommended 96-month sentence is already a significant deviation from the average and accounts for any mitigating factors.

## IV.     RESTITUTION

In his Plea Agreement, Quinn agreed that the United States would seek restitution for the losses caused by his conduct, including $17,396.75 for damage he caused to a 2024 Chevrolet Silverado 1500 Pickup Truck, license plate D73760D, owned by the State of Washington, as well as the amounts paid to repair or replace other government vehicles damaged on April 4, 2025. The United States inquired of the United States Marshals Office whether there are any additional restitution claims but has not yet received a response.

## V.     CONCLUSION

For the reasons set forth above, the United States respectfully recommends the Court impose a custodial sentence of 96 months, to run concurrently to the sentences imposed in Snohomish County Superior Court cases 24-1-00997-31, 24-1-00998-31, and 24-1-00957-31. The sentence should be followed by a three-year term of supervised

United States' Sentencing Memorandum - 9
*United States v. Quinn*, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

release. The Court should also order restitution in the amount of $17,396.75 (or as otherwise updated) and payment of the mandatory fee of $200 ($100/per charge).

DATED this 13th day of January 2026.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

*s/ Marci L. Ellsworth*
MARCI L. ELLSWORTH
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, WA 98402
Phone: 253-428-3819
Email: marci.ellsworth@usdoj.gov

United States' Sentencing Memorandum - 10
*United States v. Quinn*, CR25-5167TMC

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800